In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-523 CV


____________________



THOMAS J. SIBLEY, Appellant



V.



RMA PARTNERS, L.P./SIXTH RMA PARTNERS , L.P., Appellee






On Appeal from the County Court of Jefferson County at Law No. 1 


Jefferson County, Texas


Trial Cause No. 75,594






OPINION ON REMAND


 In an earlier opinion in this cause, we found limitations barred the promissory note
suit of Sixth RMA Partners, L.P. ("Sixth RMA") against Thomas J. Sibley. See Sibley v.
Sixth RMA Partners, L.P., 105 S.W.3d 1, 7 (Tex. App.--Beaumont 2001, pet. granted). On
appeal, the Texas Supreme Court reversed our judgment and remanded the cause to us for
consideration of Sibley's remaining issues. See Sixth RMA Partners, L.P. v. Sibley, 111
S.W.3d 46, 56 (Tex. 2003).

 We consider five issues. Three are the undecided issues previously presented to us: 
(1) the trial court erred in awarding attorney's fees because Sixth RMA failed to prove it
presented its claim as required under section 38.002 of the Texas Civil Practices and
Remedies Code; (2) the trial court's attorney's fee award ($82,748.50) is excessive, and bears
no reasonable relationship to the amount in controversy; and (3) the trial court erred in
awarding Sixth RMA attorney's fees without conditioning them on appellate success. The
fourth issue asks whether recent legislative changes require the post judgment interest in this
case to be lowered to the prime rate in effect when the judgment was signed. The fifth issue
maintains appellee's use of a trade name while engaged in debt collection was illegal. Sixth RMA purchased a portfolio of promissory notes from the Resolution Trust
Corporation, including the two executed by Sibley, who previously had defaulted on both
notes. Though the Resolution Trust Corporation informed Sibley his notes had been sold to
Sixth RMA, Sibley received collection notices, not from Sixth RMA, but rather from RMA
Partners, L.P. ("RMA"). Sibley filed a declaratory judgment suit seeking a finding that he
owed no debt to RMA. In turn, RMA filed suit against Sibley on the defaulted promissory
notes. In its second supplemental petition, RMA sought to change the named plaintiff from
RMA to "Sixth RMA Partners, L.P., a/k/a RMA Partners, L.P." The trial court entered final
judgment in favor of "Sixth RMA Partners., L.P. a/k/a RMA Partners, L.P." 

 The Texas Supreme Court noted that although RMA's use of a supplemental rather
than an amended pleading was improper to effect the name change, it was a defect in form,
which Sibley waived by not properly objecting. Sibley 111 S.W.3d at 54. The Court further
reasoned that when, as here, neither party requested the trial court to make fact findings, it
is implied the trial court made all fact findings necessary to support its judgment. Id. at 52. 
The Court determined: (1) some evidence supported the trial court's implied finding that
Sixth RMA Partners, L.P. used the name RMA Partners, L.P. as an assumed name when
collecting Sibley's notes; (2) Sixth RMA's second supplemental pleadings were effective to
substitute its correct legal name; and (3) Sibley waived any challenge that Sixth RMA's
failure to file the required assumed name certificate precludes its suit because that contention
was not properly raised in the trial court. Id. at 49.

 In his presentment issue, Sibley argues that presentment of the claim by Sixth RMA
was required and that Sixth RMA could not have fulfilled this requirement by using an
assumed name as it did not file an assumed name certificate. Because Sixth RMA sought
attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code, Sibley
maintains Sixth RMA had to comply with that statute's requirements, which are: (1) the
claimant must be represented by an attorney; (2) the claimant must present the claim to the
opposing party or its duly authorized agent; and (3) there must not have been a tender of the
just amount owed before the expiration of the thirtieth day after the claim is presented. See
Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon 1997). Sibley contends a demand
made under the name RMA Partners alleging a debt owed to RMA Partners does not fulfill
Sixth RMA's statutory presentment requirement and that the only document resembling a
presentment by Sixth RMA was the supplemental pleading through which Sixth RMA
purportedly joined the suit. 

 Neither party requested findings of fact and none were filed. Thus, we imply the trial
court made all findings necessary to support its judgment and will affirm the judgment if it
can be upheld on any legal theory finding support in the evidence. See Worford v. Stamper,
801 S.W.2d 108, 109 (Tex.1990).

 Both promissory notes executed by Sibley contain identical language regarding
collection costs and waiver. The paragraph entitled "Collection Costs" provides, upon
default and the lender's exercise of its remedies, the maker will be required to pay the
lender's reasonable costs and attorney's fees incurred in enforcing its rights. The paragraph
entitled "Waiver" provides that the maker waives certain legal requirements relating to the
collection of notes, including presentment for payment. The trial court properly could have
determined these contractual provisions controlled over the requirements of Chapter 38 of
the Civil Practices and Remedies Code. See Twelve Oaks Tower I, Ltd. v. Premier Allergy,
Inc., 938 S.W.2d 102, 118 (Tex. App.--Houston [14th Dist.] 1996, no writ) (basing attorney's
fees on underlying contract rather than statutory requirements); One Call Sys., Inc. v.
Houston Lighting & Power, 936 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1996,
writ denied) (upholding award of attorney's fees in the absence of other affirmative relief
because the parties were free to adopt a more liberal standard for recovery of attorney's fees
in their contract and the appellate court is bound by their choice). 

 Thus, the trial court may have determined that Sibley waived presentment and,
accordingly, may have awarded fees pursuant to the promissory notes' terms rather than
under the statute. In that case, filing of an assumed name certificate would be unnecessary. 
Sibley's presentment issue is overruled.

 Sibley's second issue asserts the $82,748.50 attorney's fee award is excessive. The
original principal sums of the two notes totaled $19,342.82. The total amount of principal
and interest owed through August 2, 2000, was approximately $43,000. Thus, the attorney's
fee award was almost twice the amount of principal and interest due at trial, August 3, 2000.

 We review the trial court's award of attorney's fees under an abuse of discretion
standard. Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 556 (Tex. App.--Austin 1999,
pet. denied). The test for abuse of discretion is whether the trial court acted without
reference to any guiding rules or principles; in other words, whether the act was arbitrary or
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 
We will not reverse the trial court's judgment absent a clear showing of abuse of discretion. 
Newberry, 999 S.W.2d at 556.

 "The determination of reasonable attorney's fees is a question of fact for the trier of
fact." Stamp-Ad, Inc. v. Barton Raben, Inc., 915 S.W.2d 932, 937 (Tex. App.--Houston [1st
Dist.] 1996, no writ). Here, the trial court was allowed to consider "the nature and
complexity of the case, the amount in controversy, the amount of time and effort required,
and the expertise of counsel in arriving at a reasonable amount as attorney fees." Id. 

 The trial court heard conflicting testimony on attorney's fees. Sibley's expert testified
a reasonable hourly fee would be $150, and stated the number of hours worked on Sibley's
behalf was approximately 300, which for billing purposes had been reduced to 240. Sibley's
expert further testified that the attorney's fees being sought by Sixth RMA were "quite
excessive." And though Sibley's expert admitted the litigation had been contentious, with
unusual developments in defenses and claims, he asserted that none of these would be
problems for attorneys familiar with this sort of litigation as were the ones representing Sixth
RMA. 

 Sixth RMA's lead trial counsel testified that reasonable and necessary fees in this case
were $82,748. A summary of hours and fees billed by RMA's attorneys was accepted into
evidence. RMA's counsel explained that his firm had handled the case since 1995. He
further testified the case had three different judges over the years; discovery delays had
occurred and there were difficulties in setting pretrial conferences. There were also
difficulties in setting the trial, with thirteen attempts having been made to obtain an
agreement on a setting. Further, the case had required extensive briefing, not only for trial
but for pretrial motion hearings, including a motion for summary judgment.

 While cross-examining Sixth RMA's counsel, Sibley's attorney stated that his
objections to the fees were not about specific items, but rather were philosophical regarding
the amount of fees requested when compared to the amounts owed on the notes.

 While we agree that the amount of attorney's fees seems excessive if compared solely
to the amount owed, that comparison is only one factor that the trial court could have
considered. Flint & Assocs. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 626
(Tex. App.--Dallas 1987, writ denied) (approving an attorney's fee award of $162,000 where
the total actual damages received were $24,067.14). The Flint Court opined: "The
determination of what is reasonable cannot be made by application of some mechanical
formula. Rather, the court must take into consideration the entire nature of the case." Id. 
Based on the testimony of Sixth RMA's expert, the trial court could have considered that the
case was complicated and time consuming. That Sibley's expert disagreed does not show
an abuse of discretion. See Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978) (A trial court
does not abuse its discretion when it makes a decision on conflicting evidence.). We overrule
issue two.

 Sibley's third issue originally before us contended the trial court erred in awarding
Sixth RMA attorney's fees without conditioning them on appellate success. Of course, in
view of Sixth RMA's appellate success in Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d
46 (Tex. 2003), this issue is moot and we need not consider it.

 The fourth issue maintains recent legislative changes to the Finance Code require post
judgment interest in this case to be lowered to the prime rate in effect when the judgment was
signed. The 78th Legislature amended the Texas Finance Code to set the post judgment
interest rates as follows: "the prime rate as published by the Federal Reserve Bank of New
York on the date of computation," 5% per year in the event the prime rate is less than 5% or
15% per year if the prime rate is more than 15%. (1)
 These amendments apply to a final
judgment that is "signed or subject to appeal on or after the effective date of this Act." Tex.
Fin. Code Ann. § 304.003 (Vernon Supp. 2004).

 Sibley contends because his appeal still was pending when the Finance Code
amendments became effective, the new post judgment interest rates should apply. We
disagree.

 Two of our sister courts of appeal already have decided this matter adversely to
Sibley's argument. See Columbia Med. Ctr. of Las Colinas v. Bush, 122 S.W.3d 835 (Tex.
App.--Fort Worth 2003, pet. denied); see CIGNA Healthcare of Texas, Inc. v. Pybas, 127
S.W.3d 400, 420 (Tex. App.--Dallas 2004), judgm't vacated and case dism'd pursuant to
settlement, 2004 WL 585008 (Tex. App.--Dallas March 25, 2004). In Bush, the court stated: 
"The plain meaning of the phrase 'subject to an appeal' when used to describe a judgment
traditionally means that the judgment fully and finally disposes of all parties and all issues
before the trial court and therefore is capable of being appealed." See Bush, 122 S.W.3d at
865 (and cases cited therein). Thus, the Fort Worth Court of Appeals determined the
amendments apply to (1) judgments signed on or after September 1, 2003, and (2) judgments
signed before September 1, 2003, but which did not become subject to appeal until on or
after September 1, 2003. Id. (2)

 The final judgment here was signed August 15, 2000. Appellant filed his notice of
appeal on November 9, 2000, at which time this cause became "pending" on appeal, rather
than "subject to" appeal, long before the amendments' effective dates. (3) Thus, the
amendments do not apply to the judgment in this case.

 We overrule Sibley's fourth issue.

 In his fifth issue, Sibley contends RMA's use of a trade name while engaged in debt
collection was illegal under Chapter 392 ( Debt Collection) of the Texas Finance Code. (4) See
Tex. Fin. Code Ann. § 392.304(a)(1)(A) (Vernon Supp.2004). However, Sibley makes this
argument too late. He never raised it in the trial court and thus failed to preserve it. See Tex.
R. App. P. 33.1(a); see also Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993) (generally,
a party may not raise an issue, even a constitutional claim, for the first time on appeal). We
overrule issue five.

 Having overruled all of appellant's issues, we AFFIRM the trial court's judgment.


 PER CURIAM


Submitted on March 22, 2004

Opinion Delivered May 6, 2004



Before McKeithen, C.J., Burgess and Gaultney, JJ.
1. Act of June 2, 2003, 78th Leg., R.S., ch. 676, § 1, 2003 Tex. Gen. Laws 2096-97
(amended 2003) (current version at Tex. Fin. Code Ann. § 304.003(c) (Vernon Supp.
2004)).

2. The Fort Worth court noted this situation could arise if, prior to September 1, 2003,
a default judgment were taken against only some of the defendants in a multi-defendant case. 
The judgment would not be appealable until the plaintiff disposed of its claims against the
remaining defendants, an event that might not occur until after September 1, 2003. See Bush,
122 S.W.3d at 865-66.
3. The finance code amendments apply to a final judgment that "is signed or subject
to appeal on or after the effective date of this Act." See Act of June 2, 2003, 78th Leg., R.S.,
ch. 204, § 6.04, 2003 Tex. Gen. Laws 862, 862 (effective date Sept. 1, 2003); Act of June 1,
2003, 78th Leg., R.S., ch. 676, § 2(a), 2003 Tex. Gen. Laws 2096, 2097 (effective date June,
20, 2003)
4. That statute prohibits a debt collector from using any name other that the true
professional or business name or the true personal or legal name of the debt collector. See
Tex. Fin. Code Ann. § 392.304(a)(1)(A) (Vernon Supp. 2004). Further, a violation of
Chapter 392 is a deceptive trade practice under the Texas Deceptive Trade Practices Act. See
Tex. Fin. Code Ann. § 392.404 (Vernon 1998).